UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GIRARD C. CHAMNESS,

            Plaintiff,

            v.

JOHN M. McHUGH,
*Secretary of the Army*,

            Defendant.

Civil Action No. 09-2287 (BAH)
Judge Beryl A. Howell

## MEMORANDUM OPINION

      Plaintiff Girard Chamness, a former Staff Sergeant in the Illinois Army National Guard, has filed this case seeking to correct alleged errors in his military record. In February 2003, after twenty years in the National Guard, the Qualitative Retention Board ("Retention Board") reviewed the plaintiff's service record pursuant to Army Regulation ("Army Reg.") 135-205 to determine if the plaintiff should be retained for continued military service. Unfortunately, the plaintiff was not selected, and for the past eight years the plaintiff has sought to overturn the Retention Board's 2003 decision. The plaintiff now challenges the Army Board for Correction of Military Records' ("ABCMR") decision to affirm the Retention Board's ruling, arguing that the ABCMR's decision was arbitrary, capricious, unsupported by evidence, and contrary to law in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.* Pending before the Court are cross motions for summary judgment filed by the plaintiff and the defendant. Having reviewed the administrative record, the Court concludes that the ABCMR's decision did not violate the APA. Accordingly, the defendant's motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied.

**I.     BACKGROUND**

The facts of this case are largely undisputed. In 1981, plaintiff Girard C. Chamness enlisted in the Illinois Army National Guard. Administrative Record ("A.R."), at 7. Five years later, in 1986, the plaintiff was called to Active Guard Reserve ("AGR") status. *Id.* In May 1989, the plaintiff was promoted to the rank of Sergeant, and later rose to the rank of Staff Sergeant. *Id.* at 4, 19-20. During his military career, the plaintiff received several awards and commendations, and had a history of successful evaluation report ratings, with some exceptions. *Id.* On repeated occasions, plaintiff's evaluators assigned him an overall success rating of 3 out of 5. Def.'s Stat. of Facts, ECF No. 4, ¶ 2; *see also* A.R. 34, 38, 40, 42, 46, 48, 50, 61, 63, 67. Throughout his career, however, the plaintiff had difficulty keeping his weight and body fat within Army Regulation standards. A.R. 4, 40, 61, 92, 284, 288. Indeed, the plaintiff failed Army Physical Fitness Tests ("APFT") on August 4, 2000, May 23, 2001, and May 23, 2002. *Id.* at 284-87.

On September 5, 2001, the Departments of the Army and Air Force, Illinois National Guard, notified the plaintiff that he would be eligible for retirement pay at the age of 60 because he had completed twenty years in the Illinois National Guard. *Id.* at 8. On December 14, 2002, the plaintiff was informed that pursuant to Army Reg. 135-205[1] the Retention Board would review his personnel records on February 25, 2003. *Id.* In preparation for this review, a summary of the plaintiff's personnel record was created, indicating that although the plaintiff had failed an APFT, his commanding officer recommended that he be retained. A.R. 81, 83. The

---

[1] Army Reg. 135-205 provides, *inter alia*, that the Qualitative Retention Board is to review personnel records for selected Army Reserve soldiers who have twenty-years or more of qualifying service. The regulation states that "[a] continuing program of qualitative retention is essential to provide for career progression of qualified enlisted personnel at proper intervals in their careers. The [Qualitative Retention Program] will . . . [e]nsure only the best qualified Soldiers are retained beyond 20 years of qualifying service for non-regular retired pay. These soldiers will be retained for continuing assignment to the comparatively few senior noncommissioned officer (NCO) positions."

plaintiff reviewed the record sent to the Retention Board, and stated in his Enlisted Qualitative Retention Personnel Summary: "I am currently flagged for overweight and [Physical Training]. I am currently under a doctor's care for a planter's [sic] wart on my left foot and have a profile not to run. When the planter's [sic] wart is done being treated and has healed, I will be able to start working on physical fitness training, which will allow me to meet both the physical fitness standards and weight standards." *Id*.  The personal summary sent to the Retention Board indicated that in addition to failing APFTs, the plaintiff weighed 221 pounds and had 30.81% body fat. *Id.* at 81.

On February 23, 2003, the Retention Board reviewed the plaintiff's record. Compl. ¶ 32. A few months later, on April 10, 2003, the Illinois National Guard notified the plaintiff by memorandum that the Retention Board had not selected him for retention. A.R. 9, 69. The Retention Board is not required to issue a written justification of its decisions pursuant to Army Reg. 135-205, and no such justification was provided in this instance. Compl. ¶ 34.

On June 5, 2003, the plaintiff requested that the Illinois Army National Guard Inspector General ("IG") investigate the circumstances surrounding his non-retention. *See* A.R. 70. Specifically, the plaintiff alleged that the leadership of his unit had failed to uniformly and accurately enforce the weight and Physical Fitness Test standards by not conducting required monthly weigh-ins and by selectively applying the weight and body fat standards to the plaintiff. *See* Compl. ¶ 43.

In response to the plaintiff's request, the IG initiated an inquiry and completed a report, which agreed with most of the plaintiff's allegations regarding his unit leadership's failure to enforce the weight and Physical Fitness Test standards. A.R. 122-131. In particular, the IG noted that one of the APFTs that the plaintiff allegedly failed had never actually occurred. *Id.* at

128. Nonetheless, the IG concluded that the plaintiff should have been separated for failing an APFT on May 23, 2001. *Id.* In addition, the IG noted that the plaintiff had been selected for discharge not only because of poor weight control ability, but also because of his poor leadership skills, mediocre Non-Commissioned Officer Evaluation Reports ("NCOER"), and his poor physical fitness. *Id.*

The plaintiff was honorably discharged, effective July 3, 2003. *Id.* at 9. At the time of his discharge, the plaintiff had accrued twenty-one years and ten months towards a non-regular retirement (a Reserve retirement). *Id.* at 30. The plaintiff served seventeen years on Active Guard/Reserve status, which was creditable as time served on active duty. *Id.* at 9. The plaintiff would have been required to serve three more years in an active duty or Active Guard/Reserve status to obtain a regular (active duty) retirement. *Id.* at 18. After his commendable service to his country, the plaintiff was separated with full separation pay, at ten percent, based on 17 years, 3 months, and 22 days total active federal service. *Id.* at 9.

On August 5, 2004, the plaintiff applied for reconsideration to the ABCMR, contending, *inter alia*, that the Retention Board had reviewed inaccurate and incomplete weight control information for the plaintiff and, consequently could not accurately determine his progression concerning his weight control. Compl. ¶ 42-43. In addition, the plaintiff argued that the IG unfairly suggested that he should have been selected for discharge in 2001. *Id.* at ¶ 43. To rectify these alleged errors, the plaintiff requested that the ABCMR reinstate him with back pay and correct his military record to show no break in service. A.R. at 9. The ABCMR, however, notified the plaintiff that he had not exhausted his administrative remedies. *Id.*

On May 18, 2006, the plaintiff again petitioned the ABCMR requesting, *inter alia*, reinstatement in the Illinois National Guard, receipt of all back pay, and correction of his record

...

...

to show no break in service. *Id.* at 9, 139. On March 2, 2007, the ABCMR received an advisory letter from the Army National Guard Bureau recommending that the ABCMR grant the plaintiff the requested remedies. *Id.* at 136. Contrary to this recommendation, on April 5, 2007, the ABCMR again informed the plaintiff that he had to exhaust the required administrative remedies, which he still had not done, before the ABCMR could act on his application. *Id.* at 139. Specifically, the plaintiff needed to seek relief from the Illinois Adjutant General or the Chief of the Army for the National Guard. *Id.* The ABCMR therefore returned the plaintiff's application without prejudice. *Id.*

On June 21, 2007, the plaintiff filed a request with the Illinois Adjutant General to reinstate him in the Illinois National Guard. *Id.* at 9. On February 12, 2008, the Adjutant General offered to settle the plaintiff's claim by affording him the opportunity to reenlist in the Illinois National Guard at his previous rank and grade, with an Active Guard/Reserve position in his previous career specialty, contingent upon the plaintiff dismissing the ABCMR application, and plaintiff's compliance with all reenlistment qualifications, including the weight standards. *Id.* at 9-10, 141. The plaintiff responded by claiming that he was entitled to full relief. Compl. ¶ 56. The Adjutant General then advised the plaintiff that it could not grant him his requested relief. A.R. at 10.

Having exhausted his administrative remedies, the plaintiff returned to the ABCMR to pursue his application, which the ABCMR denied on the merits on August 29, 2008. *Id.* at 1-14. In its decision, the ABCMR stated that the Retention Board initially "reviewed the [plaintiff]'s entire service record, including his evaluation reports, awards and decorations, and other factors having a bearing on a Soldier's future performance and contribution to a unit. The 'other factors' may have included the APFT failures and weight issues; but, there is no evidence that the

applicant's APFT failures and weight issues were the only reasons the applicant was not selected for retention." *Id.* at 12.  Having found no error or injustice in the plaintiff's military record, the ABCMR denied the plaintiff's petition.  *Id.* at 13-14.

On December 2, 2009, the plaintiff filed a Complaint with this Court, asserting that the ABCMR decision not to correct his record was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*.  Compl. ¶ 70.  The plaintiff also claimed that the ABCMR's actions violated his due process rights because "[t]he Army failed to comply with regulations that prohibit records containing material errors from being submitted to the [Retention Board]."  *Id.* ¶ 78.

On March 18, 2010, the defendant filed the administrative record pertaining to the plaintiff's allegations, and moved for summary judgment.  ECF Nos. 4-5.  On June 24, 2010, the plaintiff filed a cross-motion for summary judgment.  ECF No. 9.  Both parties' motions for summary judgment are pending before the Court.[2]

As explained below, the Court concludes that the defendant's decision to discharge the plaintiff was not arbitrary, capricious, or an abuse of discretion; nor did the defendant violate the plaintiff's due process rights.  Accordingly, the defendant's motion for summary judgment is granted.  The plaintiff's motion for summary judgment is denied.

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" based upon the pleadings, depositions, and affidavits and other factual materials in the record.  FED. R. CIV. P. 56(a), (c); *Tao v. Freeh*,

---

[2] This case was reassigned to the current presiding judge on January 19, 2011.

27 F.3d 635, 638 (D.C. Cir. 1994).  The Court "need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).  The Court must view all inferences in a light most favorable to the non-moving party.  *Tao*, 27 F.3d at 638 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 255 (1986)).  The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute.  *Celotex Corp. v. Catrett*, 47 U.S. 317, 323 (1986).

### III.   DISCUSSION

The plaintiff contends that the Retention Board considered erroneous and inaccurate information regarding the plaintiff's physical fitness evaluations in making its decision, and the ABCMR's failure to correct these errors in the plaintiff's military records was arbitrary, capricious, unsupported by evidence, or otherwise contrary to law.  Compl. ¶ 70.  The plaintiff further alleges that the ABCMR's decision violated his due process rights.  *Id.* ¶ 76.  After carefully considering the applicable legal standards and the record in this case, the Court finds that the ABCMR's decision was not arbitrary, capricious, or contrary to law.  Moreover, the plaintiff's due process rights were not violated because he does not have a property interest in retaining his position in the Illinois National Guard.  The Court therefore grants the defendant's motion for summary judgment.

#### A.  The ABCMR's Decision Did Not Violate the APA

The ABCMR "may correct any military record . . . when the Secretary [of the Army] considers it necessary to correct an error or remove an injustice."  *Cone v. Caldera*, 223 F.3d 789, 792 (D.C. Cir. 2000) (quoting 10 U.S.C. § 1552(a)) (internal quotations omitted).  In this case, the plaintiff alleges that the ABCMR's decision not to correct his military records was made in violation of the APA.  *See* Compl. ¶ 70.

The APA requires courts to set aside agency actions, including those of the ABCMR, that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Cone*, 223 F.3d at 793 (applying the APA to review of ABCMR decisions). In evaluating agency actions under the "arbitrary or capricious" standard, courts must consider "whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations and citation omitted); *DIRECTV, Inc. v. FCC*, 110 F.3d 816, 826 (D.C. Cir. 1997). The scope of the Court's review under this standard "is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983).

The Court starts with the assumption that the agency action is valid. *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981). However, if an agency "failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action." *Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999). At the very least, the agency must have reviewed relevant data and articulated a satisfactory explanation establishing a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs.*, 463 U.S. at 43 (internal quotations omitted); *see also Pub. Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir. 1993) ("The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result."). Agency actions are considered arbitrary and capricious if the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise." *Motor Vehicle Mfrs.*, 463 U.S. at 43. While the agency's explanation cannot "run [ ] counter to the evidence," *id.*, courts should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).

When reviewing actions of the ABCMR, courts apply an "unusually deferential application of 'arbitrary or capricious' standard." *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006); *Cone*, 223 F.3d at 793; *Hardy v. McHugh*, 692 F. Supp. 2d 76, 80 (D.D.C. 2010). Indeed, "[m]ilitary boards are entitled to even greater deference than civilian administrative agencies." *Escobedo v. Green*, 602 F. Supp. 2d 244, 248 (D.D.C. 2009). The substantial deference "is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its areas of competence." *Id.* at 248-49 (quoting *Cone,* 223 F.3d at 793). The ABCMR decision is therefore not arbitrary, capricious, or contrary to law as long as the decision "minimally contains a rational connection between the facts found and choice made." *Id.* at 249 (quoting *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997)).

In present case, the plaintiff alleges that the ABCMR's decision was arbitrary, capricious, or contrary to law because the board (1) relied upon a record that contained "erroneous weight control data," which "led to the Retention Board's review of inaccurate records," and (2) erroneously determined that the plaintiff had a mediocre record of performance. Pl.'s Mot. Summ. J, ECF No. 9, at 16-17. The Court addresses both of these arguments *seriatim*.

### *1. The Inaccurate Weight Control Data in the Plaintiff's Record Was Immaterial to the ABCMR's Decision.*

The plaintiff contends that the ABCMR decision was arbitrary and capricious because it was "based upon records generated and considered in violation of Army Regulations." Pl.'s Mot. for Summ. J., ECF No. 9, at 15. Specifically, the plaintiff points to three allegedly "material errors" in his record that purportedly undermine the reasonableness of the Retention Board's decision: (1) his unit did not consistently administer monthly weigh-ins for the plaintiff while he was on a mandatory weight control program, and thus there is no evidence of his weight-loss progress; (2) the Retention Board reviewed incorrect documentation regarding the plaintiff's May 22, 2002 APFT failure; and (3) the plaintiff's command violated Army Reg. 623-105 ¶ 2-11(g), by failing to verify and enter APFT data on two of the plaintiff's Non-Commissioned Officer Evaluation Reports ("NCOER"). Pl.'s Mot. for Summ. J., ECF No. 9, at 16.

When reviewing a decision of the Retention Board, the ABCMR is required to correct "material error" in the record. Army Reg. 135-205 ¶ 4-16(a). The defendant concedes that the plaintiff's record may contain the information he contends is inaccurate, but argues that "[a]ny erroneous physical fitness data the Retention Board did consider was not material to its decision under the facts of this case." Def.'s Opp'n Mot. Summ. J., ECF No. 12, at 4. The Court finds that this conclusion is supported by the record.

When the Retention Board did not select the plaintiff for retention in 2003, it did not – nor was not required to – issue a written opinion regarding the bases for its conclusion. Thus, when reviewing the Retention Board's decision, the ABCMR considered the plaintiff's entire file and his performance to date, which included consideration of the plaintiff's medical condition, physical fitness, and any other factor "bearing on a soldier's future performance and contribution

to a unit." Army Reg. 135-205, ¶ 4.  Among the items included in the plaintiff's record was his own admission that he was overweight, as well as his past history of failing APFTs and weight control issues.  A.R. at 6.

The plaintiff argues that his superior's poor administration of the weight control program contributed to his difficulty maintaining regulation weight and fitness.  However, the ABCMR stated that the issue before the board was "not the unit's poor leadership or other unit Soldiers."  A.R. at 12.  Moreover, the ABCMR stated that regardless of the weigh-ins, "the [plaintiff] knew or should have known that he had a history of APFT failures and exceeding weight standards."  *Id.* at 13.  The ABCMR therefore concluded that plaintiff's weight management issues were inexcusable despite the alleged failures of his unit in administering the weight control program because "implicit in the Army's promotion, retention, or any personnel management system, is the universally accepted and frequently discussed principle that [noncommissioned officers] have a responsibility for their own careers."  *Id.*

Regardless of the plaintiff's fitness issues, the ABCMR additionally noted that the Retention Board considered the plaintiff's "evaluation reports, awards and decorations, and other factors having a bearing on a Soldier's future performance and contribution to a unit."  A.R. 12.  Although the plaintiff argues that he had a stellar record of service, the Retention Board was tasked with selecting the "best qualified soldiers." The plaintiff himself admits that although he was rated "Excellent (Exceeds Standards)" on his NCOER seven times during in his career, he was given a lower rating of "Successful (Meets Standards)" on fifty-one occasions. Pl.'s Mot. Summ. J, ECF No. 9, at 17.  With regard to his rating for overall promotion, the plaintiff rated "among the best" three times, and "fully capable" nine times.  *Id.*  Most of the plaintiff's

NCOER ratings indicate average, above-average, or acceptable performance, but few indicators establish that the plaintiff was among the "best qualified" soldiers.

On these stated grounds, the record does not establish that the inaccuracies in the plaintiff's military record were material to the Retention Board's decision and necessitated correction from the ABCMR. The Retention Board analyzed the entirety of the plaintiff's record, and there is no evidence that the inaccurate reports were the grounds for the Retention Board's decision. The ABCMR's decision not to reinstate the plaintiff and grant him his requested relief was therefore not arbitrary, capricious, or contrary to law.

### 2. *ABCMR's Decision Was Supported by The Record*

The plaintiff further contends that the ABCMR's "argument that [plaintiff] was not selected for retention because of mediocre evaluation reports, lack of military schooling and low potential is unsupported by the record." Pl.'s Mot. Summ. J., ECF No. 9, at 17. The Court disagrees with this contention.

An ABCMR decision is not arbitrary and capricious if the decision "minimally contains a rational connection between the facts found and the choice made." *Escobedo*, 602 F. Supp. 2d at 249 (quoting *Frizelle*, 111 F.3d at 176); *see also Hardy*, 692 F. Supp. 2d at 80. Pursuant to Army Regulations, the Retention Board is directed to consider "[d]emonstrated performance as attested by evaluation reports, review of the Military Personnel Records Jacket – U.S. Army (MPRJ), and other evidence." Army Reg. 135-205 ¶ 4-12. These factors are used to select the "best qualified" applicant for retention. *Id.* at ¶ 4-13. When reviewing these decisions, the Court's function "is not to serve as a super correction board that reweighs the evidence." *Epstein v. Geren*, 539 F. Supp. 2d. 267, 275 (D.D.C. 2008). Courts provide substantial deference to the

military agency "to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings." *Id.* at 248-49 (quoting *Cone*, 223 F. 3d at 793).

The Retention Board and the ABCMR examined the plaintiff's entire personnel record, and based on that record concluded that the plaintiff was not among the "best qualified" soldiers. Indeed, as explained above, the evaluation reports in the plaintiff's record indicate that he was rated as an average soldier for the majority of his career. *See* A.R. at 12. The plaintiff himself submitted a statement to the Retention Board stating that he was flagged for weight and fitness issues. Even the Inspector General's report, which acknowledged the inaccuracies in the plaintiff's record, stated that "[w]hen looking at the entire picture of [plaintiff's] career, it is evident that it can be described at best as merely mediocre." A.R. at 129. The ABCMR's decision therefore clearly is supported by evidence in the plaintiff's personnel file.

The plaintiff relies on *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989), as support for the proposition that the Court has power and authority to review and remand the decision of a military correction board that is not supported in the record. That case is of little relevance to these proceedings. In *Kreis*, the D.C. Circuit simply concluded that decisions by military boards of corrections were justiciable, a proposition which the defendant does not dispute. *See id.* at 1515.

Here, the dispute focuses only on whether the plaintiff's military record provides support for the ABCMR and Retention Board's determination that the plaintiff was not among the "best qualified" soldiers. The Court concludes that there is a rational connection between that conclusion and facts in the record. Consequently, the ABCMR's decision upholding the plaintiff's discharge was not arbitrary, capricious, or contrary to law.

## B. The ABCMR Did Not Violate The Plaintiff's Due Process Rights

The plaintiff alleges that "[t]he ABCMR's denial of Plaintiff's application where the Army' violated its own regulation constitutes a constitutional due process violation."  Compl. ¶ 79.  This allegation is without merit.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  The procedural component of the Due Process Clause is intended to "impose constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Three basic elements are required for a procedural due process claim: (1) deprivation by the government; (2) of life, liberty, or property; (3) without due process of law.  *Lightfoot v. District of Columbia*, 237 F.R.D. 314, 319 (D.D.C. 2011) (citing *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991)).  In order to maintain a procedural due process claim, the plaintiff must establish that the government deprived him of a liberty or property interest.  *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  Indeed, "[o]nly after finding the deprivation of a protected interest do[es] [the Court] look to see if the [government's] procedures comport with due process." *Am. Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 59 (1999).

Here, the plaintiff has not asserted a cognizable property interest which the government has allegedly deprived him.  The law is clear that the plaintiff cannot maintain a due process claim because "there is no protected property interest in continued military service."  *Wilhelm v. Caldera,* 90 F. Supp. 2d 3, 8 (D.D.C. 2000); *see also Hanson v. Wyatt*, 552 F.3d 1148, 1158 (10th Cir. 2008).  Moreover, as the Court previously noted, the ABCMR and Retention Board

did not base their decision upon inaccurate reports in the plaintiff's records and, thus, did not violate army regulations.

## IV.  CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied.  An Order consistent with this memorandum opinion will be entered.

**DATED: SEPTEMBER 30, 2011**

                                                  /s/ *Beryl A. Howell*
                                                  BERYL A. HOWELL
                                                  United States District Judge